UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

CHRISTOPHER W. KINDER,

          Plaintiff,

v.                                    Civil Action No. 2:11-0254

NOVO NORDISK, INC.,
a foreign corporation,
and STEFANIE HENRICH,
individually,

          Defendants.


MEMORANDUM OPINION AND ORDER


          Pending is plaintiff's motion to remand, filed April

22, 2011.


I.  Background


          This action arises out of the termination of

plaintiff's employment with defendant Novo Nordisk, Inc.

("Novo").  Plaintiff is a resident of Putnam County, West

Virginia.  Novo is a foreign corporation with a principal place

of business in New Jersey.  Henrich is a resident of Kanawha

County, West Virginia.

          The following factual allegations are taken from the

amended complaint.  Plaintiff was employed by Novo as a

pharmaceutical sales representative for more than six years,

spanning approximately from 2004 to 2010.  (Am. Compl. ¶¶ 7, 22).
During this period, Novo launched novomedlink.com, a website that
allowed physicians to obtain the company's pharmaceutical drug
samples through the internet.  (Id. ¶ 10).  After the site
launched, plaintiff complained to his regional director about
Novo's seemingly improper use of the internet to supply
controlled substances.  (Id. ¶ 13).  He also complained to his
supervisor that Novo and Henrich, a diabetes care specialist for
Novo, appeared to be illegally distributing pharmaceutical drug
samples through a pattern of sample diversion.  (Id. ¶¶ 4, 14).

In response to plaintiff's complaints about illegal
drug distribution and diversion of drug samples, Novo opened an
internal investigation.  (Id. ¶ 17).  Henrich thereafter
participated in interviews, emails, and "direct communication"
with Novo concerning plaintiff's complaints, during which she
allegedly falsely stated that plaintiff had violated company
policy.  (Id.).  According to plaintiff, Henrich spread false
information about him in order to cover up her own misconduct and
to secure her employment with Novo.  (Id.).

Following the investigation, plaintiff alleges that
both defendants generated and distributed false information about
plaintiff that would later serve as a pretext for his

2

termination.  (See id. ¶ 19).  Novo then fired plaintiff on July 13, 2010.  (Id. ¶ 22).  Plaintiff asserts that Novo terminated his employment in retaliation for his complaints about the company's pharmaceutical distribution practices.  (Id. ¶ 24).

On March 10, 2011, plaintiff instituted this action in the Circuit Court of Kanawha County.  Defendants removed on April 15, 2011, invoking the court's diversity jurisdiction.  Plaintiff thereafter amended his complaint on May 18, 2011.[1]  The amended complaint contains four counts.  Counts I and IV are asserted against both defendants.  Count I is a claim for retaliatory discharge in violation of a substantial public policy.  Count IV asserts a claim for outrage and intentional infliction of emotional distress.  Counts II and III assert claims, against Novo only, for violations of the West Virginia Human Rights Act and the West Virginia Wage Payment and Collection Act.

Plaintiff moved to remand April 22, 2011, contending that Henrich, a non-diverse defendant, defeats complete diversity and the court therefore lacks subject matter jurisdiction.  In opposition to remand, defendants maintain that Henrich was

---

[1]     The amended complaint does not add any new counts to the original complaint, though it does provide additional factual allegations concerning Henrich's involvement in plaintiff's discharge.

fraudulently joined solely for the purpose of defeating diversity jurisdiction.  On related grounds, Henrich moved to dismiss the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) on June 1, 2011, asserting that plaintiff has pled insufficient facts to state a claim against her.

### II.  Motion to Remand

A.   Fraudulent Joinder Standard

"A defendant may remove any action from a state court to a federal court if the case could have originally been brought in federal court."  Yarnevic v. Brink's, Inc., 102 F.3d 753, 754 (4th Cir. 1996) (citing 28 U.S.C. § 1441).  Federal district courts have original jurisdiction over actions between citizens of different states in which the matter in controversy exceeds $75,000, exclusive of interest and costs.  28 U.S.C. § 1332(a).

The doctrine of fraudulent joinder permits a district court to "disregard, for jurisdictional purposes, the citizenship of certain nondiverse defendants, assume jurisdiction over a case, dismiss the nondiverse defendants, and thereby retain jurisdiction."  Mayes v. Rapoport, 198 F.3d 457, 461 (4th Cir. 1999).  Our court of appeals lays a "heavy burden" upon a

4

defendant claiming fraudulent joinder:

> "In order to establish that a nondiverse defendant has
> been fraudulently joined, the removing party must
> establish either: [t]hat there is no possibility that the
> plaintiff would be able to establish a cause of action
> against the in-state defendant in state court; or [t]hat
> there has been outright fraud in the plaintiff's pleading
> of jurisdictional facts."

Id. at 464 (emphasis in original) (quoting Marshall v. Manville

Sales Corp., 6 F.3d 229, 232 (4th Cir. 1993)).  The applicable

standard "is even more favorable to the plaintiff than the

standard for ruling on a motion to dismiss."  Hartley v. CSX

Transp., Inc., 187 F.3d 422, 424 (4th Cir. 1999).  Indeed, "'the

defendant must show that the plaintiff cannot establish a claim

against the nondiverse defendant even after resolving all issues

of fact and law in the plaintiff's favor.'"  Mayes, 198 F.3d at

464 (quoting Marshall, 6 F.3d at 232−33)).

        As Hartley illustrates, fraudulent joinder claims are

subject to a rather black-and-white analysis in this circuit.

Any shades of gray are resolved in favor of remand.  See Hartley,

187 F.3d at 425.  At bottom, a plaintiff need only demonstrate a

"glimmer of hope" in order to have his claims remanded:

> In all events, a jurisdictional inquiry is not the
> appropriate stage of litigation to resolve . . . various
> uncertain questions of law and fact . . . Jurisdictional
> rules direct judicial traffic.  They function to steer
> litigation to the proper forum with a minimum of
> preliminary fuss.  The best way to advance this objective

> is to accept the parties joined on the face of the
> complaint unless joinder is clearly improper.  To permit
> extensive litigation of the merits of a case while
> determining jurisdiction thwarts the purpose of
> jurisdictional rules.
>
> * * * *
>
> We cannot predict with certainty how a state court
> and state jury would resolve the legal issues and weigh
> the factual evidence in this case.  [Plaintiff's] claims
> may not succeed ultimately, but ultimate success is not
> required . . . . Rather, there need be only a slight
> possibility of a right to relief.  Once the court
> identifies this glimmer of hope for the plaintiff, the
> jurisdictional inquiry ends.

Id. at 425-26 (citations omitted).  In determining "whether an

attempted joinder is fraudulent, the court is not bound by the

allegations of the pleadings, but may instead consider the entire

record, and determine the basis of joinder by any means

available."  Mayes, 198 F.3d at 464 (internal quotations

omitted).

Inasmuch as defendants do not allege any fraud in the

pleading, the only question is whether plaintiff has any

possibility of recovery against Henrich in state court.


B.   Retaliatory Discharge Claim


Henrich argues that plaintiff's attempt to hold her

individually liable for retaliatory discharge fails as a matter

of law.  She notes that plaintiff has not alleged that Henrich
had supervisory authority over plaintiff or that Henrich had any
power to terminate his employment.  Henrich further contends that
she did not, in fact, have any involvement in the termination
decision.  Plaintiff concedes that Henrich was a coworker who did
not have supervisory authority over him while he worked at Novo.
Nevertheless, he asserts that West Virginia law permits
retaliatory discharge claims against even non-supervisory
coworkers who were actively involved in the matters about which
the employee had complained.

        The West Virginia Supreme Court of Appeals first
recognized a cause of action for retaliatory discharge in <u>Harless</u>
<u>v. First National Bank</u>, 246 S.E.2d 270 (W. Va. 1978) ("<u>Harless</u>
<u>I</u>"), where it held as follows:

> The rule that an employer has an absolute right to
> discharge an at will employee must be tempered by the
> principle that where the employer's motivation for the
> discharge is to contravene some substantial public policy
> principle, then the employer may be liable to the
> employee for damages occasioned by this discharge.

<u>Id.</u>  The court further recognized that a retaliatory discharge
claim may, under some circumstances, be asserted not only against
the employer itself but individual employees as well.  The
plaintiff in <u>Harless I</u> complained to two of his employer's vice
presidents, defendants Wilson and Schulte, about the employer's

7

potential violations of consumer protection laws.  In response to
these complaints, the plaintiff alleged, defendant Wilson
terminated his employment in June 1975, though he was reinstated
a week later.  After the plaintiff again complained about the
employer's potentially illegal practices, he was demoted in
October 1975 and subjected to threats and harassment by defendant
Wilson.  Then, following the plaintiff's cooperation with an
internal investigation conducted by the employer in December
1976, defendant Schulte fired the plaintiff.  The plaintiff
thereafter brought suit against the employer, Wilson, and Schulte
for retaliatory discharge.  Wilson and Schulte argued that the
claims against them failed as a matter of a law because the
employer was solely responsible for violating the consumer
protection laws.  In rejecting this contention, the court
reasoned as follows:

> We do not read the complaint that narrowly, since it
> fairly implies that both of the individual defendants, as
> well as the bank, were actively involved in the matters
> complained about. All the defendants are charged jointly
> with the allegation that the two individuals were acting
> within the scope of their employment.  While the proof
> may exculpate one or all of the defendants, from a pure
> pleading standpoint the complaint was sufficient to
> withstand a motion to dismiss by the individual
> defendants.

Id. at 276-77.

       Harless I was followed some four years later by

**8**

Harless v. First National Bank, 289 S.E.2d 692 (W. Va. 1982)

("Harless II"), where the court further defined the extent of

individual liability for retaliatory discharge claims.   In

Harless II, the trial judge found that defendant Wilson could not

be held liable for retaliatory discharge because, despite

plaintiff's allegation that Wilson had fired him, the evidence

showed that Wilson had only suspended his employment.   The

supreme court of appeals disagreed:

> Whether Wilson actually fired the plaintiff, Harless, is
> not the critical point.   In a retaliatory discharge case
> the person who does the actual firing has little to do
> with the underlying controversy. [footnote omitted]  The
> discharge serves to fix responsibility on the employer
> but this does not mean that another employee who has been
> the principal protagonist in obtaining the employee's
> discharge would not also be liable.  Here, Wilson who was
> the plaintiff's immediate superior and directly involved
> on behalf of the Bank in the unlawful consumer practices,
> was hostile to the plaintiff's efforts to rectify the
> improper practices.   The evidence shows that Wilson's
> views carried considerable weight with the Bank's
> management and contributed to the ultimate discharge of
> the plaintiff.
>
> * * * *
>
> [W]e believe the trial court erred in holding that Wilson
> could not be found liable for the retaliatory discharge.
> His supervisory position over the plaintiff coupled with
> the evidence that directly linked him as an adversary in
> the central controversy in which the plaintiff was
> involved at the Bank was sufficient to support the jury's
> finding of liability.

Id. at 698-99.

Although the court in <u>Harless II</u> found that defendant Wilson's supervisory position (coupled with his involvement in the alleged retaliatory practices) was a "sufficient" condition for imposing liability, it did not suggest that this was a necessary condition.  In other words, the court did not foreclose the possibility of holding a non-supervisory employee liable for retaliatory discharge where that employee was, in the words of the <u>Harless I</u> court, "actively involved in the matters complained about."

Turning to plaintiff's claims, paragraphs 17 and 19 of the amended complaint allege as follows:

> 17. Defendant Henrich supplied information known, or reasonably should have been known, to be false to Defendant Novo as part of their investigation in response to Plaintiff Kinder's prior complaints. Upon information and belief, Defendant Henrich participated in the investigation into Plaintiff Kinder's complaints in the form of interview[s], emails and direct communication, and therefore was actively involved with the decision to terminate Plaintiff Kinder's employment in order to quash his prior whistle-blower complaints. Moreover, Defendant Henrich[] chose to provide known false information against Plaintiff Kinder in an effort to secure her employment with Defendant Novo by ensuring Plaintiff Kinder's employment was terminated.

> * * * *

> 19.  Defendant Henrich and Defendant Novo engaged in acts intended and designed to cover their own wrongful acts as brought to light by Plaintiff Kinder's prior whistle-blower complaints.  As part of the acts to cover their wrongful acts, the defendants generated, relied

upon and distributed false information about Plaintiff Kinder and subsequently decided to terminate Plaintiff Kinder's employment in order to quash his prior whistle-blower complaints.

(Am. Compl. ¶¶ 17, 19).

Construed in the light most favorable to the plaintiff, the foregoing allegations suggest that Novo and Henrich engaged in an allegedly illicit pharmaceutical distribution scheme and that, after plaintiff complained about the scheme, the defendants acted in concert to terminate his employment.  While it is undisputed that Henrich was not plaintiff's supervisor, Henrich has cited no authority indicating that a retaliatory discharge claim may not be asserted against a coworker who played an active role both in the matters about which the plaintiff complained and in the plaintiff's eventual termination.  As discussed above, neither Harless I nor Harless II explicitly foreclose such a claim.  Insofar as there is any legal uncertainty as to this question, the court must resolve all doubts in favor of remand. See Hartley, 187 F.3d at 425.

Nor is the court persuaded by Henrich's bare assertion that she had no involvement in the decision to terminate plaintiff.  Such a factual argument carries no weight in the fraudulent joinder context, where the plaintiff's version of

11

facts are accepted as true and where remand is required so long
as there exists a "slight possibility of a right to relief."  See
id. at 426.  The court thus concludes that Henrich has failed to
carry her heavy burden of showing that plaintiff has not even a
"glimmer of hope" in state court.  See id.[2]

C.   Attorneys' Fees and Costs Attendant to Motion to Remand

        Plaintiff asks the court to award fees and costs
attendant to their motion to remand pursuant to 28 U.S.C. §
1447(c).  The statute provides that a court remanding a case may
"require payment of just costs and any actual expenses, including
attorney fees, incurred as a result of the removal."  28 U.S.C. §
1447(c).  "[A]n award of fees under § 1447(c) is left to the
district court's discretion, with no heavy congressional thumb on
either side of the scales."  Martin v. Franklin Capital Corp.,
546 U.S. 132, 139 (2005).  "The appropriate test for awarding
fees under § 1447(c) should recognize the desire to deter

_____

        [2]    Henrich also attacks the complaint's inclusion of
allegations based "upon information and belief," contending that
such allegations are conclusory in nature and should be ignored
by the court.  In support of this proposition Henrich relies upon
several cases concerning Rule 12(b)(6) motions to dismiss.  As
the court of appeals explained in Hartley, however, the standard
for fraudulent joinder is "more favorable to the plaintiff" than
the Rule 12(b)(6) standard.  Hartley, 187 F.3d at 424.  The cases
cited by Henrich are inapposite here.

removals sought for the purpose of prolonging litigation and imposing costs on the opposing party, while not undermining Congress' basic decision to afford defendants a right to remove as a general matter, when the statutory criteria are satisfied." Id. at 140.  Ultimately, reasonableness is the standard by which the request must be evaluated.  Id.  "Absent unusual circumstances, courts may award attorneys' fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal.  Conversely, when an objectively reasonable basis exists, fees should be denied."  Id. (citations omitted).

       Having found that Henrich had an objectively reasonable basis for removal that warranted development, analysis, and resolution of the removal issues in this case, the court declines to award plaintiff's costs and fees in bringing this motion.

                         III.  Conclusion

       For the foregoing reasons, the court concludes that it lacks subject matter jurisdiction.  It is accordingly ORDERED as follows:

    1.   That plaintiff's motion to remand be, and it hereby is, granted.

                              13

2.      That this action be, and it hereby is, remanded

        for all further proceedings to the Circuit Court of

        Kanawha County.


        The Clerk is directed to forward a copy of this written

opinion and order to counsel of record and any unrepresented

parties and a certified copy to the clerk of court for the

Circuit Court of Kanawha County.

                              DATED: August 11, 2011


                              _____
                              John T. Copenhaver, Jr.
                              United States District Judge